IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| The Sater Design Collection, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No.: 4:08-cv-4133-TLW-SVH |
| Waccamaw Construction, Inc., David | ) | |
| Hostetler, Edith M. Neeves, Alexander | ) | |
| Construction, Inc., Michael R. | ) | |
| Alexander, Qwest Home Design, Inc., | ) | |
| and Brad Odom, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# ORDER

On December 23, 2008, the plaintiff, Sater Design Collection, Inc. ("Sater" or "plaintiff"), brought this civil action for copyright infringement of its "6804" architectural work. (Doc. # 1).  Sater named Waccamaw Construction, Inc. ("Waccamaw"), David Hostetler ("Hostetler"), and Edith M. Neeves as defendants.  (Doc. # 1).  On February 2, 2009, Waccamaw and Hostetler filed an answer.  (Doc. # 15).  On April 17, 2009, Waccamaw and Hostetler filed an amended answer to the plaintiff's complaint, which included third-party claims against Alexander Construction, Inc. and Qwest Home Design, Inc.  (Doc. #32).  Sater filed an amended complaint on June 11, 2009, again alleging copyright infringement and naming Waccamaw Construction, Inc., David Hostetler, Edith M. Neeves, Alexander Construction, Inc., Michael R. Alexander, Qwest Home Design, Inc., and Brad Odom as defendants.  (Doc. # 47).  Sater alleges that the defendants infringed its copyrighted "6804" home plan by designing, constructing, and participating in the construction of a residence located at 840 Waterton Avenue, Myrtle Beach,

South Carolina ("Waterton residence"). Waccamaw and Hostetler filed an answer to the amended complaint and cross-claimed against the other defendants.[1] (Doc. # 58).

On April 12, 2010, Sater filed a motion for summary judgment. (Doc. # 98). Waccamaw and Hostetler filed a response on May 14, 2010 (Doc. # 106) to which Sater filed a reply. (Doc. # 107). On November 5, 2010, Waccamaw and Hostetler filed a motion in which they sought leave from the Court to replace the memorandum they had filed in response to Sater's summary judgment motion. (Doc. # 111). Sater filed a response in which it consented to the motion to amend/correct. (Doc. # 112). On December 2, 2010, this Court granted the motion to amend/correct (Doc. # 113), and Waccamaw and Hostetler filed their amended response to the motion for summary judgment on December 6, 2010. (Doc. # 114). Sater filed a reply on December 16, 2010. (Doc. # 116). Sater also filed three motions in limine on May 11, 2010. (Doc. # 105). A hearing on Sater's motion for summary judgment (Doc. # 98) and its motions in limine (Doc. # 105) was held via telephone on January 25, 2011. (Entry # 121). The Court has considered the applicable law, arguments of counsel, and memoranda submitted. These motions are now ripe for disposition.

## FACTS

The material facts in this case are not in dispute. Sater is an architectural design firm that creates and sells custom and pre-drawn building plans. One such building design is the 6804 plan, also known as the "Nicholas Park" design. Edith M. Neeves commissioned the construction of the Waterton residence for her and her husband, Mack Neeves, in 2006. Ms.

---

[1] Sater has voluntarily dismissed with prejudice its claims against Edith M. Neeves, Qwest Home Design, Inc., and Brad Odom. (Docs. 89, 101). Sater has also voluntarily dismissed without prejudice its claims against Alexander Construction, Inc. and Michael R. Alexander. (Doc. # 72). Therefore, Sater only has remaining claims against Waccamaw and Hostetler.

Neeves originally consulted with Michael R. Alexander of Alexander Construction, Inc., who gave her and her husband the 6804 plan. According to Ms. Neeves, she believed that Alexander and Alexander Construction had legally acquired the plans and that Alexander Construction would be the contractor on the job. Subsequently, the 6804 plan was given to Brad Odom of Qwest Home Design, Inc. ("Qwest"). He made modifications to the plan based on the Neeves' requests. The plan was redrawn by Qwest with the requested modifications and labeled with the moniker "Qwest Home Design."

When it was time to build the Waterton residence, the Neeves' lender did not approve Alexander Construction to build the home. The Neeves turned to Waccamaw to build the residence, and the two parties entered into a contract. Hostetler, who is the sole owner and officer of Waccamaw Construction, Inc., was the signatory for Waccamaw Construction. Mr. and Mrs. Neeves gave Waccamaw the set of plans, which had the Qwest moniker on it ("Qwest plan" or "Qwest design"). There is no evidence showing that Waccamaw knew this plan was based on Sater's 6804 design. Waccamaw made no inquiry of Qwest regarding the origin of the plan. Waccamaw began construction of the residence based on this set of plans and made significant progress toward completion. However, Waccamaw did not complete the residence because the Neeves' lender ceased funding for the project. Sater later discovered the Waterton residence and filed this civil action.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury

3

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the plaintiff bears the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires that the plaintiff identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine dispute of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the plaintiff bears this initial responsibility, the defendants, as the nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 324; Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970). In satisfying this burden, the defendants must offer more than a mere "scintilla of evidence" that a genuine dispute of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the defendants must produce evidence on which a jury could reasonably find in their favor. See Matsushita, 475 U.S. at 587.

In considering the plaintiff's motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the defendants as the nonmoving party. See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted). Conversely, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

4

## DISCUSSION

**a. Direct Infringement**

Sater alleges that Waccamaw and Hostetler infringed its copyright when they constructed the Waterton residence based on the 6804 design. "Architectural works" are included among the copyrightable works of authorship listed in the Copyright Act. See 17 U.S.C. § 102(a)(8). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) ("Feist"). Each of these elements is, in turn, composed of various sub-parts.

*1. Ownership of a Valid Copyright*

There are several aspects to the element of ownership of a valid copyright. Most obvious is the question of whether the claimed copyright is valid. Also included within this element is the issue of originality. See 4-13 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01[A]; see also Custom Dynamics, L.L.C. v. Radiantz LED Lighting, Inc., 535 F. Supp. 2d 542, 551 (E.D.N.C. 2008) (noting that the ownership of a valid copyright prong consists of several sub-elements, including originality). "Originality is a constitutional requirement" that must exist in order for a work to qualify for copyright protection. Feist, 499 U.S. at 346; see U.S. Const. art. I, § 8, cl. 8. Congress made this explicit through 17 U.S.C. § 102(a), which provides that only "original works of authorship" may receive copyright protection.

The issuance of a certificate of registration by the United States Copyright Office has an important effect on the first element of a copyright infringement case. Under 17 U.S.C. § 410(c), a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the

5

certificate."   In applying the language of 17 U.S.C. § 410(c), The Fourth Circuit Court of Appeals has held that a certificate of copyright granted by the Copyright Office "is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation."   M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 434 (4th Cir. 1986). Furthermore, the Fourth Circuit has held that defendants who argue that a plaintiff's work is not copyrightable or lacks originality "have the burden of overcoming the presumption arising out of the granting of the copyright by the Copyright Office."   Id; see also Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 428 (4th Cir. 2010) ("When [a certificate of registration] exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid."); see generally 3-12 Nimmer on Copyright § 12.11[B] ("By reason of Section 410(c) of the current Act, a copyright registration certificate creates a *prima facie* presumption as to the validity of the copyright.").   However, "this presumption is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations."   Universal Furniture Int'l, 618 F.3d at 430.

Sater has produced a certificate of registration issued by the United States Copyright Office for the 6804 plan.  See Sater Aff. Ex. B, April 12, 2010 (Doc. # 98, Attach. 2).  Dan F. Sater, II, the President and CEO of The Sater Design Collection, Inc., also provides testimony through an affidavit that he is the creator of the 6804 plan, that the 6804 design is an original architectural plan, and that Sater Design is the owner of the 6804 plan.  See Sater Aff. ¶¶ 4-6, April 12, 2010 (Doc. # 98, Attach. 2).  As a result, Sater has provided prima facie proof of the validity of its copyright in the 6804 design.   Therefore, the burden of overcoming this presumption is shifted to Waccamaw and Hostetler, who concede this issue in their memorandum in response to Sater's motion for summary judgment, where they state that they do

"not dispute the plaintiff's ownership of a valid copyright at this time." Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. 2 (Doc. # 114). In addition, Waccamaw and Hostetler do not assert any arguments or present any evidence to dispute the validity or originality of Sater's copyright in response to Sater's motion. As a result, if ownership of a valid copyright were the only element of a claim for copyright infringement, summary judgment in Sater's favor on the issue of liability would be appropriate at this time. See Celotex, 477 U.S. at 324 (holding that under Federal Rule of Civil Procedure 56, once a moving a party informs this Court of the basis for its motion, a non-moving party who bears the burden of proof on a dispositive issue must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). However, summary judgment based solely on this first element is not appropriate because there is a second element that must be established before a party is liable for copyright infringement.[2]

---

[2] Waccamaw and Hostetler assert a number of defenses in their answer to Sater's amended complaint (Doc. # 58) related to the issues of validity and originality. Waccamaw and Hostetler allege in their Fourth Defense that the 6804 design is not sufficiently original to be entitled to copyright protection. They similarly assert in their Fifth Defense that the 6804 design is commonly known and commonly used to such an extent that it lacks a reasonable level of originality. Their Seventh Defense asserts that the elements of the 6804 design are "functional and/or common ideas of a general style, and therefore are not protected by copyright." Their Twelfth Defense asserts that Sater's copyright registration is "invalid, unenforceable and not capable of sustaining an infringement action." Their Fourteenth Defense alleges that Sater's "claims for infringement are barred to the extent plaintiff incorporated others' works in its alleged '6804' design and did not provide names of such others as contributors to the work, or did not otherwise procure the prior consent of said others." Sater seeks summary judgment on these defenses. The Court concludes these may not be affirmative defenses but rather attempts to point out defects in Sater's copyright infringement claim, more specifically the element of ownership of a valid copyright. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); In re Rawson Food Service, Inc., 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."); Tingley Sys., Inc. v. HealthLink, Inc., 509 F. Supp. 2d 1209, 1220 (M.D. Fla. 2007) (considering a similar set of defenses to what Waccamaw and Hostetler assert and finding that such "defenses are essentially denials of the elements of [the plaintiff's] claims, rather than true 'affirmative defenses.'"). Because the Court does not grant summary judgment on the issue of liability or the sub-issue of ownership of a valid copyright, the Court also does not grant summary judgment on these asserted defenses at this stage.

*2. Copying of Constituent Elements of the Work that Are Original*

Sater also asserts that Waccamaw and Hostetler concede in their response to Sater's motion for summary judgment that they copied constituent elements of the 6804 design that are original.  Pl.'s Reply to Defs.' Am. Resp. to Pl's Mot. for Summ. J. 1 (Doc. # 116).  However, this Court finds that Waccamaw and Hostetler have not conceded this point.  Rather Waccamaw and Hostetler raise the issue by arguing in their response to the summary judgment motion and at the hearing that "Waccamaw's construction of the home was based off Qwest's plans, not the plaintiff's plans."  Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. 3 (Doc. # 114).  In support of this argument, they cite to <u>Dietrich v. Standard Brands, Inc.</u> where the United States District Court for the Eastern District of Pennsylvania concluded that a genuine issue of material fact existed over whether the defendant infringed the plaintiff's copyright in certain slide rule calculators.  32 F.R.D. 325 (E.D. Pa. 1963).  The issues of fact that remained were whether the plaintiff's copyrighted work contained the requisite originality required for copyright protection and whether the defendants' calculators were designed, manufactured, and sold independent of and without access to the plaintiff's copyrighted calculators.  <u>Id.</u> at 326-27.  This Court recognizes that the facts in this case are not completely analogous to the facts in <u>Dietrich v. Standard Brands, Inc.</u> because the issue of the originality of Sater's copyrighted work has not been challenged and because Waccamaw and Hostetler do not dispute that Qwest had access to the 6804 design.  However, Waccamaw's and Hostetler's response to Sater's motion for summary judgment and their reference to <u>Dietrich v. Standard Brands, Inc.</u> suffice to show that they do not concede but rather raise the issue of whether the Qwest design on which construction of the Waterton residence was based copied the constituent original elements of the 6804 design.

8

This finding does not end the matter, however, as this Court must consider whether Sater has argued and provided sufficient evidence at this stage to show there is not an issue of fact as to whether Waccamaw and Hostetler copied the constituent elements of the 6804 design that are original. This element of copyright infringement is commonly referred to simply as "copying" and "can be proved by direct or circumstantial evidence." Donald Frederick Evans & Assoc. v. Cont'l Homes, Inc., 785 F.2d 897, 904 (11th Cir. 1986). Due to a lack of direct evidence, copying is ordinarily "established by proof that the defendant had access to the plaintiff's work and produced a work that is substantially similar to the plaintiff's work." M. Kramer Mfg., 783 F.2d at 445. In its brief in support of its summary judgment motion, Sater quotes deposition testimony demonstrating that Michael Alexander of Alexander Construction gave the 6804 plan to Edith Neeves and her husband; that the plan was then given to Qwest to be modified; and that Waccamaw and Hostetler ultimately used the modified plan to construct the Waterton residence. Sater argues that in the face of this direct evidence of copying, the Court need not engage in a test of substantial similarity. In support of its argument, Sater cites to M. Kramer Manufacturing. Co. v. Andrews, where the Fourth Circuit stated that "[i]f there [is] clear proof of actual copying by the defendants, that is the end of the case."[3] M. Kramer Mfg., 783 F.2d at 445.

The Court is not sufficiently persuaded that this is the proper analysis in light of the facts of the case before the Court at this time. M. Kramer Manufacturing Co. v. Andrews involved the question of whether the defendants infringed a copyright in a computer video poker game. Although the Fourth Circuit made the above statement, the Court also examined the similarity between the plaintiff's game and the defendants' game in concluding that an infringement had

---

[3] The other cases Sater cites in support of its position—Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc., 785 F.2d 897 (11th Cir. 1986) and John Wieland Homes and Neighborhood, Inc. v. Poovey, No. 3:03CV168-H, 2004 WL 2108675 (W.D.N.C. 2004)—are not binding authority on this Court.

9

occurred even though it noted that significant direct evidence of copying existed. Id. at 445-47. Furthermore, subsequent to the Fourth Circuit's decision in M. Kramer Manufacturing Co. v. Andrews, the Supreme Court decided Feist Publications, Inc. v. Rural Telephone Service Co. ("Feist"), where it reasoned that "[n]ot all copying . . . is copyright infringement" in concluding that although there was "no doubt" Feist took substantial information from the white pages of Rural's telephone directory, a question remained as to whether Feist copied "constituent elements of the work that are original." Feist, 499 U.S. at 361. Feist is arguably distinguishable because the key issue in that case was whether Rural's white pages had the requisite originality necessary for copyright protection. However, Feist demonstrates that even in the face of direct evidence of copying, it is necessary to show that the copier incorporated the constituent elements of the copyrighted work that are original. Feist requires this Court to consider whether the modified plan drawn by Qwest and on which Waccamaw based its construction of the Waterton residence incorporated the constituent elements of the 6804 design, or in other words, whether the Qwest design is substantially similar to the 6804 plan. See Universal Furniture Int'l, 618 F.3d at 436 ("[S]ubstantial similarity asks whether a defendant copied the 'original elements' of a copyright.").

Approaching the element of copying in this manner is supported by a leading treatise on copyright law, which has described the different aspects of the element of copying illustrated by the Feist decision as factual copying and actionable copying:

> Two separate components actually underlie proof of copying, although few courts or commentators have historically differentiated among the different meanings of the term. First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration. If the answer is "yes," then one can conclude, as a factual proposition, that copying may have occurred. But the question still remains whether such copying is actionable. In other words, that first answer does not vouchsafe resolution of the legal

question whether such copying as took place gives rise to liability for infringement.

4-13 <u>Nimmer on Copyright</u> § 13.01[B].  For copying to exist as a legal proposition, it is necessary to consider "whether the defendant's work is substantially similar to the plaintiff's work such that liability may attach."  <u>Id.</u>  This approach is supported by case law from other circuits.  <u>See</u> <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 49 F.3d 807, 813 (1st Cir. 1995) ("To show actionable copying and therefore satisfy <u>Feist</u>'s second prong, a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter; to do this, he or she may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying . . . .  The plaintiff must then prove that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." (citations omitted)); <u>Gates Rubber Co. v. Bando Chem. Indus.</u>, 9 F.3d 823, 832 (10th Cir. 1993) ("Once the plaintiff has shown that it holds a valid copyright, it must next prove that the defendant unlawfully appropriated protected portions of the copyrighted work.  This question involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's program; and 2) whether, as a mixed issue of fact and law, those elements of the program that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable.").  As the authors of the aforementioned treatise on copyright law note, even in a situation where a "defendant admits copying or witnesses are available who actually viewed the act of copying, . . . copying as a legal proposition must still be established; hence substantial similarity remains an indispensible element of plaintiff's proof."  4-13 <u>Nimmer on Copyright</u> § 13.01[B] (collecting

11

cases); see also Sturdza v. Gov't of the United Arab Emirates, 281 F.3d 1287, 1295 (D.C. Cir. 2002) ("The plaintiff must show not only that the defendant actually copied the plaintiff's work, but also that the defendant's work is 'substantially similar' to protectible elements of the plaintiff's work."); Boisson v. Banian, Ltd., 273 F.3d 262, 267-68 (2d Cir. 2001) (reasoning that the element of copying consists of two parts—actual copying and substantial similarity; Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000) ("No matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work *with regard to its protected elements*."); Eng'g Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340-41 (5th Cir. 1994) (reasoning that two "components underlie proof of actionable copying" and that these components are (1) "whether the alleged infringer actually used the copyrighted material" and (2) "whether there is substantial similarity").  Similarly, while Judge Learned Hand once reasoned that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate," Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936), courts have also held that "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work that would otherwise be regarded as substantially similar to plaintiff's."  4-13 Nimmer on Copyright § 13.03[B][1][b] (collecting cases); see also Leigh, 212 F.3d at 1214 ("Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful degree."); Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1198-99 (7th Cir. 1987) ("[A copyright] forbids copying the copyrighted work without the copyright holder's permission, but it does not forbid the making of close substitutes.  So long as the second comer creates a work that is not substantially similar to the copyrighted features of the first work, there is no

infringement."); <u>Eden Toys, Inc. v. Marshall Field & Co.</u>, 675 F.2d 498, 501 (2d Cir. 1982) (quoting <u>Warner Bros., Inc. v. Am. Broad. Co.</u>, 654 F.2d 204, 211 (2d Cir. 1981) ("Even if an alleged copy is based on a copyrighted work, 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.'").  Cases involving architectural works are no different in that some courts have concluded that even in the face of direct evidence of factual copying, parties are not liable for copyright infringement if substantial similarity is missing.  <u>See</u> <u>Howard v. Sterchi</u>, 974 F.2d 1272, 1275-76 (11th Cir. 1992); <u>Lifetime Homes, Inc. v. Walker Homes, Inc.</u>, 485 F. Supp. 2d 1314, 1320 (M.D. Fla. 2007); <u>John Alden Homes, Inc. v. Kangas</u>, 142 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2001).

In the two cases Sater cites with facts analogous to the case at hand—<u>Home Design Services, Inc. v. Eber</u>, No. 3:08cv257/LAC/MD, 2009 WL 2913486 (N.D. Fla. Sept. 8, 2009) ("<u>Eber</u>") and <u>Axelrod & Cherveny Architects, P.C. v. Winmar Homes</u>, No. 2:05-cv-711-ENV-ETB, 2007 WL 708798 (E.D.N.Y. Mar. 6, 2007)—the builder was found liable for copyright infringement.  In <u>Axelrod & Cherveny Architects</u>, the court analyzed substantial similarity and found it existed.  <u>Axelrod & Cherveny Architects</u>, 2007 WL 708798, at *13-14.  However, <u>Eber</u>, in particular, is similar to this case because the builder argued it did not know or should have known the origin of the plan used to construct the house.  <u>Eber</u>, 2009 WL 2913486, at *6.  Even though the court found the builder liable, <u>Eber</u> is arguably distinguishable because the builder in that case did not raise the issue of whether the plan it used to build the structure copied constituent elements of the copyrighted work that are original.  <u>Id.</u> at *4.  Here, the Court finds that Waccamaw and Hostetler have raised this issue.

13

Sater asserts that if the Court finds it necessary to consider whether the Qwest plan and 6804 plan are substantially similar, it need only perform a brief comparison of the two plans to conclude that they are indeed substantially similar.  While the Court has examined the two plans, it chooses not reach a finding of substantial similarity at this stage because of the lack of detailed analysis and clear evidence in the record as to the similarities between the plans and the standard that should be applied when comparing them.  Cf. Howard, 974 F.2d at 1276 (reasoning that when residential architectural plans are involved, "modest dissimilarities are more significant than they may be in other types of art works").  This Court notes that Sater has made a compelling argument regarding strict liability.  Substantial case law supports this position as discussed in the succeeding paragraph.  It is only on this issue of substantial similarity that Waccamaw and Hostetler are able to avoid summary judgment with respect to liability for copyright infringement.

Assuming that the Qwest plan infringed Sater's copyright, Waccamaw and Hostetler may have difficulty avoiding liability by asserting they did not know they were infringing Sater's copyright by using the Qwest design to build the Waterton residence.  Case law establishes that knowledge or intent is not an element of copyright infringement.  See Buck v. Jewell-La Salle Realty Co., 283 U.S. 191, 198 (1931) ("Intention to infringe is not essential under the Act."); Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986) ("Even an innocent infringer is liable for infringement[;] . . . intent or knowledge is not an element of infringement."); American Press Ass'n v. Daily Story Pub. Co., 120 F. 766, 769 (7th Cir. 1902) ("It is not material . . . that the appellant . . . was not aware that the story was protected by copyright.  It published it at its peril, and ignorance will not avail."); Playboy Enter., Inc. v. Frena, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent or knowledge is not an element of

infringement, and thus even an innocent infringer is liable for infringement.")  This principle has also been applied in the context of a builder who uses a copyrighted design.  See Eber, 2009 WL 2913486, at *4; Axelrod & Cherveny Architects, 2007 WL 708798, at *7.  It is based on the idea that "'as between two innocent parties (i.e., the copyright owner and the innocent infringer) it is the latter who should suffer since he, unlike the copyright owner, either has an opportunity to guard against the infringement by diligent inquiry, or at least the ability to guard against liability for infringement by an indemnity agreement from his supplier or by an 'errors and omissions' insurance policy.'"  Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992) (quoting 4-13 Nimmer on Copyright § 13.08[B][1]).  As the Fourth Circuit has noted, "[w]hile the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement."  CoStar Group, Inc. v. Loopnet, Inc., 373 F.3d 544, 549 (4th Cir. 2004).  A builder constructing a house based on a copyrighted set of plans without permission from the copyright holder would arguably constitute conduct that causes in some meaningful way an infringement.

Waccamaw and Hostetler cite to Religious Technology Center v. Netcom On-Line Communication Services, Inc. ("Netcom") in support of their argument that they should not be considered liable for copyright infringement.  907 F. Supp. 1361 (N.D. Cal. 1995).  This case involved the question of whether an internet service provider providing internet access and a computer bulletin board service storing posted submissions were liable for copyright infringement when a person posted copyrighted materials on the internet.  Id. at 1365-66.  As explained by the Fourth Circuit, the Netcom court concluded that the internet service provider and computer bulletin board service were not liable as direct infringers because "a person [has]

15

to engage in volitional conduct—specifically, the act constituting infringement—to become a direct infringer." CoStar Group, 373 F.3d at 551. According to the Fourth Circuit, the internet service provider and bulletin board service in Nelnet were mere "conduits from or to would-be copiers and ha[d] no interest in the copy itself." Id. Netcom is distinguishable from the facts in this case. A builder who uses a set of copyrighted plans to construct a house is arguably more than a mere conduit. Further, a builder is arguably engaging in volitional conduct or, more specifically, in the act constituting infringement when it chooses to build a house based on a copyrighted design. As a result, the reasoning applied in Netcom would not preclude a finding of direct liability against a builder if the other elements of copyright infringement are proven.

**b. Contributory and Vicarious Liability**

In light of this Court's finding that liability for direct infringement has not been sufficiently established by Sater to grant summary judgment in its favor based on the current record, the Court need not address Sater's argument that Hostetler is liable as a contributory or vicarious infringer.

**c. Damages**

Sater moves for partial summary judgment on the question of damages in this case, more specifically it seeks summary judgment on the issues of actual damages and gross revenue. 17 U.S.C. § 504(a) provides that a copyright infringer is liable for either the copyright owner's actual damages and any profits of the infringer or statutory damages. Sater pursues actual damages and profits in its motion. Profits are determined by taking the infringer's gross revenue and then subtracting deductible expenses and "elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). The copyright owner has the burden of proving gross revenue. Id. The infringer then has the burden of proving deductible expenses. Id. Sater

16

argues that its actual damages should be set at $5,260[4] and that the gross revenue generated by Waccamaw and Hostetler should be set at $482,066,[5] leaving the burden on these two defendants to establish their deductible expenses.  As liability has not been established at this stage of the proceedings, this Court does not find it appropriate to issue a piecemeal ruling regarding damages.  Therefore, Sater's motion for summary judgment on the issues of actual damages and gross revenue is denied.

### d. Defenses Asserted by Waccamaw and Hostetler

Sater asserts summary judgment should be entered in its favor regarding various defenses asserted by Waccamaw and Hostetler in their answer to its amended complaint (Doc. # 58). Sater describes these defenses as affirmative defenses, but Waccamaw and Hostetler do not label them as such in their answer.

#### 1. Failure to State a Cause of Action

The Second Defense asserted by Hostetler and Waccamaw is that Sater's amended complaint fails to state a cause of action upon which relief can be granted against them.  Sater asserts in its motion for summary judgment that it has sufficiently set forth a cause of action and that summary judgment should be entered against Waccamaw and Hostetler on this issue. Waccamaw and Hostetler assert no arguments in response.  Further, this Court has examined the

---

[4] Sater calculates this amount by taking the licensing fee Sater charged in 2006 for the 6804 plan ($1,560) and adding the amount Sater would have charged to make the modifications that Qwest made to the plan ($3,700). See Sater Aff. ¶¶ 13-14, April 12, 2010 (Doc. # 98, Attach. 2).  In their response to Sater's summary judgment motion, Waccamaw and Hostetler state they "cannot refute plaintiff's assertions as to the charges in 2006 for the 6804 plan or the charges to modify said plans." Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. 5 (Doc. # 114).

[5] The contract for construction of the Waterton residence sets the price for building the house at $520,000. Contractor Agreement, June 2, 2006 (Doc. # 98, Attach. 10).  However, the house was not completed because the Neeves' lender ceased funding for the project.  The $482,066 amount Sater asserts is based on a draw request form that shows it is the next to last draw Waccamaw and Hostetler made from a loan the Neeves took out to pay for the construction and on deposition testimony of Hostetler and Mack Neeves.  Draw Request Form, Sept. 21, 2007 (Doc. # 98, Attach. 11); Hostetler Dep. 100-01, Sept. 22, 2009 (Doc. # 98, Attach. 7); Mack Neeves Dep. 52, 54, 78, Oct. 30, 2009 (Doc. # 98, Attach. 4).

complaint and finds it sufficiently sets forth a cause of action for copyright infringement. Accordingly, summary judgment is entered in Sater's favor on the issue of whether it has stated a cause of action upon which relief can be granted.

### 2. Statute of Limitations, Statute of Repose, Doctrine of Laches

Waccamaw and Hostetler assert in their Third Defense that Sater's claims are barred by the applicable statute of limitations, statute of repose, and the doctrine of laches.  Sater seeks summary judgment as to these issues.  17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  "'A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.'"  Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997) (quoting Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)).  Sater asserts and provides an affidavit in support of its assertion that it first discovered the alleged infringement occurring at the Waterton residence in May 2008.  See Sater Aff. ¶ 9, April 12, 2010 (Doc. # 98, Attach. 2).  Sater filed its complaint in December 2008.  As for the doctrine of laches, it "may be applied by a court to bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that bringing the action is unreasonable and unjust."  Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001).  The Fourth Circuit has held that a judicially created equitable doctrine such as laches should not be applied to shorten the statutory limitations period Congress established for bringing claims under the Copyright Act.  Id.

Summary judgment in Sater's favor on these issues is appropriate for several reasons. First, Waccamaw and Hostetler make no arguments and provide no evidence that Sater knew or should have known about the alleged infringing activities more than three years before this

18

lawsuit was filed.  Second, the Fourth Circuit has held that the doctrine of laches cannot be applied to shorten the statutory period Congress created for the Copyright Act.  Even if the doctrine of laches was applicable, Waccamaw and Hostetler provide no arguments indicating that such a long time has passed since Sater's cause of action accrued that it would be unreasonable and unjust for Sater to receive relief on its claims.  Finally, Waccamaw and Hostetler provide no arguments as to what statute of repose they allege applies or how it should be applied.  Accordingly, summary judgment in Sater's favor is appropriate with regard to whether its claims are barred by the applicable statute of limitations, statute of repose, and the doctrine of laches.

### 3. Copyright Misuse

Waccamaw and Hostetler assert in their Thirteenth Defense that Sater's claim is barred by the doctrine of copyright misuse.  A misuse of copyright defense ordinarily applies when a "copyright is being used in a manner violative of the public policy embodied in the grant of a copyright."  Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 978 (4th Cir. 1990).  It is "generally found in cases where the copyright owner has engaged in some form of anti-competitive behavior."  Thomas M. Gilbert Architects, P.C. v. Accent Builders and Developers, LLC, 629 F.Supp.2d 526, 536 (E.D. Va. 2008).  Waccamaw and Hostetler assert no arguments and present no evidence in furtherance of a copyright misuse defense.  As a result, this Court grants summary judgment to Sater on the issue of copyright misuse.

### 4. Independent Creation and Substantial Similarity

Waccamaw and Hostetler assert in their Sixth Defense that if any of the elements of the 6804 design are original, none of these elements are substantially similar to Waccamaw's works.  Their Tenth Defense alleges that the "ordinary observer" test does not apply to Sater's cause of

action and that the "more discerning observer" test should be applied, under which no infringement exists. Their Fifteenth Defense asserts that Waccamaw's work was the result of independent creation, meaning no cause of action against it exists. Their Sixteenth Defense, Seventeenth, and Eighteenth Defenses relate to the issue of whether Waccamaw's work is substantially similar to the protectable elements of the 6804 design.

As for the defenses dealing with the issue of substantial similarity, the Court stated previously in this Order its finding that Waccamaw and Hostetler raise the issue of substantial similarity and that Sater has not sufficiently shown it is entitled to summary judgment on this issue at this time. With respect to independent creation, Sater bases its argument that summary judgment should be granted in its favor on Waccamaw's and Hostetler's admission of direct copying, but it presents no authority in support of its position. While Waccamaw and Hostetler admit Qwest used the 6804 design to draw the plan that they utilized in building the Waterton residence, the Court denies summary judgment on the issue because Sater has not met its burden as the moving party.[6]   As for the Tenth Defense raised by Waccamaw and Hostetler, it apparently relates to the standard this Court should apply in determining substantial similarity. The Court holds it is inappropriate to address the issue at this juncture because factual issues exist as to substantial similarity at this stage.

### 5. Plaintiff Suffered No Damages

Sater seeks summary judgment with regard to Waccamaw's and Hostetler's Twentieth Defense where they assert that Sater suffered no damages as a result of their conduct. As stated previously, because liability has not been established in this case, this Court does not issue a

---

[6] In addition, the Fourth Circuit has held that independent creation is not an affirmative defense for which the alleged infringer has the burden of persuasion. Keeler Brass Co. v. Cont'l Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988).

ruling with regard to damages.  Therefore, summary judgment in Sater's favor on this issue is not appropriate at this stage.

### 6. Innocent Infringement

For their Twenty-First Defense, Waccamaw and Hostetler argue that their actions were not willful.  As set forth previously in this Order, knowledge or intent is not an element of copyright infringement.  However, the question of whether the actions of Waccamaw and Hostetler were willful may be relevant if Sater elects to pursue statutory damages.  See 17 U.S.C. § 504(c)(2) (stating that an award of statutory damages can be reduced to a sum not less than $200 if the infringer proves and the court finds "that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright").  It also may be relevant to the issue of attorneys' fees.  See Superior Form Builders v. Dan Chase Taxidermy Supply Co., 881 F. Supp. 1021, 1024 (E.D. Va. 1994).  Because lack of willfulness may affect the amount of damages recoverable, the Court denies summary judgment on Waccamaw's and Hostetler's twenty-first defense at this time.

### 7. Other Defenses

In Sater's reply (Doc. # 116) to Waccamaw's and Hostetler's response to Sater's motion for summary judgment, Sater asserts that summary judgment should be entered in its favor on several other defenses raised by Waccamaw and Hostetler in their answer to Sater's amended complaint (Doc. # 58).  More specifically, Sater seeks summary judgment on Waccamaw's and Hostetler's Eighth, Ninth, Eleventh, and Nineteenth Defenses.[7]  Sater's argument with respect to

---

[7] Waccamaw and Hostetler assert in their Eighth Defense that Sater's design is not entitled to copyright protection because of the "merger doctrine."  Their Ninth Defense alleges that Sater's design is not entitled to copyright protection because of the "*scenes à faire* principle."  Their Eleventh Defense asserts that if Sater's design is entitled to any copyright protection, it "is that of a 'thin' copyright, infringement of which requires nearly verbatim copying or showing of supersubstantial similarity, neither of which exists as to Waccamaw's work."  Their

these defenses is that they are not legally cognizable or are not supported by the undisputed facts in this case.  At this stage, the Court concludes that summary judgment is not appropriate with respect to these defenses.

### e. Motions in Limine

Sater filed three motions in limine (Doc. # 105) upon which this Court will issue a ruling based on the record before it at this time.

Sater asserts in its first motion in limine that Waccamaw and Hostetler should be precluded from introducing evidence or eliciting any testimony regarding other copyright infringement cases that Sater has filed.  Sater states in their memorandum in support of the motions in limine (Doc. # 105) that Waccamaw and Hostetler do not oppose the relief requested in the first motion in limine.  The attorneys for Waccamaw and Hostetler confirmed this non-opposition at the hearing.  As a result, Sater's first motion in limine (Doc. # 105) is **GRANTED**.

Sater asserts in its second motion in limine that Waccamaw and Hostetler should be precluded from introducing evidence or eliciting any testimony regarding Sater's status as an out-of-state corporation.  Sater states in its memorandum (Doc. # 105) that Waccamaw and Hostetler do not oppose the second motion in limine.  However, Waccamaw's and Hostetler's position is not clear from the record.  This Court finds that such evidence is not relevant to the issues currently being litigated and is thus inadmissible.  See Fed. R. Evid. 401, 402.  As a result, Sater's second motion in limine (Doc. # 105) is **GRANTED**.

Sater seeks in its third motion in limine to preclude Waccamaw and Hostetler from introducing evidence regarding deductible expenses.  An infringer has the burden of proving

---

Nineteenth Defense alleges that "to the extent that there are similarities between Waccamaw's work and the alleged '6804' designs, such similarities are the result of functional requirements of the buildings, building code restrictions, neighborhood restrictions, and/or lot restrictions, and not design elements."

deductible expenses in a copyright infringement case if the plaintiff pursues actual damages and profits of the infringer.  See 17 U.S.C. § 504(b).  As a result, the issue of deductible expenses is relevant to the question of damages in this case.  The Court does not issue a ruling on damages in this Order.  As a result, Sater's third motion in limine (Doc. #105) is **DENIED**.

## CONCLUSION

For the reasons set forth herein, Sater's motion for summary judgment (Doc. # 98) is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** with respect to the Second, Third and Thirteenth Defenses raised by Waccamaw and Hostetler in their answer to Sater's amended complaint (Doc. # 58).  More specifically, summary judgment is **GRANTED** on the issues of whether Sater has sufficiently stated a cause of action upon which relief can be granted; whether its claims are barred by the applicable statute of limitations, applicable statute of repose, or the doctrine of laches; and whether its claims are barred by the defense of copyright misuse.  Summary judgment is **DENIED** as to all other issues.  Sater's motions in limine (Doc. # 105) are also **GRANTED** in part and **DENIED** in part.  More specifically, motions in limine numbers one and two are **GRANTED**, and motion in limine number three is **DENIED**.

**IT IS SO ORDERED.**

s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

February 14, 2011

Florence, South Carolina